IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES EUGENE MOORE,           )
                                )
        Plaintiff,              )
                                )
v.                              )    CASE NO. 2:19-CV-694-RAH-KFP
                                )              (WO)
M. SPENCER, et al.,             )
                                )
        Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.    INTRODUCTION

Plaintiff Charles Eugene Moore, an indigent state inmate, filed this pro se action pursuant to 42 U.S.C. § 1983 challenging actions at Kilby Correctional Facility on September 12, 2019. Doc. 1 at 2. He names Kilby employees Lieutenant Maurice Spencer, Officer Caronce Bryant, and Warden Karla Jones as Defendants and alleges that Spencer and Bryant subjected him to excessive force when moving him from Cell E-25 after he had been placed in shackles and handcuffs. *Id.* at 3. Plaintiff seeks monetary damages for the alleged constitutional violation. *Id.* at 4. Defendants filed a Special Report and supporting evidentiary materials. Doc. 19. Defendants deny that Spencer and Bryant subjected Plaintiff to excessive force and allege instead that he refused to obey orders when they were moving him and that he became physically aggressive, forcing them to take him to the ground. *Id.*

After reviewing Defendants' Special Report, the Court issued an Order directing Plaintiff to file a response supported by affidavits or statements made under penalty of

perjury and other evidentiary materials. Doc. 21 at 2. The Order advised that, unless a party objected within ten days and presented sufficient legal cause, the Court may, at any time after Plaintiff's response deadline and without further notice, treat the Special Report and supporting materials as a motion for summary judgment and, after considering any response, rule on the motion. *Id.* Plaintiff filed a sworn response to the Special Report (Doc. 23). The Court now treats Defendants' Special Report (Doc. 19) as a motion for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

To survive a properly supported motion for summary judgment, a plaintiff must produce some evidence supporting his constitutional claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citations and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")).

Here, after a review of all the evidence admissible at trial, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of (1) Spencer and Bryant with respect to the request for monetary damages against them in their official capacities or (2) Warden Jones in her supervisory capacity. However, the Court finds that Moore has demonstrated a genuine

dispute of material fact as to his allegation of excessive force against Defendant Spencer and Bryant in their individual capacities.

## III.   FACTUAL ALLEGATIONS

As mentioned above, Plaintiff alleges that on September 12, 2019, Bryant and Spencer assaulted him when they were moving him from segregation, while he was in handcuffs and shackles. Specifically, he claims Spencer "grabbed [him] and slung [him] down on the ground." Doc. 9 at 1. He further alleges Bryant and Spencer "[were] hitting me, kicking me, kneeing me and disrespecting my dignity by spitting on me and . . . the corrupt officers stated '[t]hey couldn't wait to do this shit and shut the fuck up.'" Doc. 1 at 3.

Defendants deny Plaintiff's allegations. Bryant testified by affidavit as follows:

> On September 12, 2019, I Officer Caronce Bryant was assigned to the Restrictive Housing Unit Rover. As I was locking down the hallway, so inmate Moore could be moved to L-Block, I observed inmate Charles Moore shout, "Man get the fuck off me," then he struck Sergeant Spencer with his elbow. Sergeant Spencer took him to the ground and attempted to control him. Inmate Moore continued to be disorderly and began to threaten Sergeant Spence. I assisted Lieutenant Brandon Knowlton with getting inmate Moore off the ground. At no time did I assault inmate Moore.

Doc. 19-4 at 1. Spencer testified by affidavit as follows:

> On September 12, 2019, I Correctional Sergeant Maurice Spencer was assigned as the Restricted Housing Supervisor. At approximately 11:10 am, I restrained inmate Charles Moore B/297332 and was attempting to escort him to a newly assigned living area. At that time inmate Moore became disorderly, jumping up and down and shouting, "I'm gone make these bitches kill me, I'll spit on you like I did them hoes last week." I attempted to verbally reprimand inmate Moore, instructing him to stop his actions. Inmate Moore stated, "Man get the fuck out my face" and attempted to move past me. I then grasped inmate Moore's right forearm in an attempt to stop him. Inmate Moore then struck me in my shoulder area with his elbow and stated "get the

fuck off me." Immediately utilized the take down to the rear, placing inmate Moore on the floor. Inmate Moore began to spit and threaten to kill me several times. I utilized the Back-Control technique until inmate Moore calmed down. All force ceased. He was then escorted to the Health Care Unit by another Officer.

Doc. 19-3 at 1–2. Warden Jones testified that she was not present at the incident but confirms that the use-of-force investigation report supports the officers' testimony as to what occurred. Doc. 19-2 at 1. Plaintiff's body chart dated September 12, 2019, at 11:15 a.m. shows the following: "Old scar to lower neck. Redness noted to upper neck near hair line. No other injuries or bruises noted." Doc. 19-6.

In response to Defendants' Special Report, Plaintiff asserts that he followed proper procedures and that, as he was following a specific order from Spencer to "walk in front of the seg unit," Spencer pushed him to the ground, Bryant walked up, and both officers began beating him. Doc. 23 at 1. Plaintiff specifically denies that he "elbowed" Spencer or that he was "jumping up in down when the shackles were tight around [his] ankles" or that he was spitting or threatening to spit on the officers. *Id*. at 2.

## IV.   DISCUSSION

### A.   Sovereign Immunity for Official Capacity Claims

To the extent Plaintiff sues Defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, [465 U.S. 89, 100] (1984), or Congress has abrogated the state's immunity,

*see Seminole Tribe v. Florida*, [517 U.S. 44, 59] (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, [916 F.2d 1521, 1525 (11th Cir. 1990)], and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997). Because Defendants were indisputably state actors at the time of the alleged excessive force, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Id.*; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.    Respondeat Superior Claims

Plaintiff does not allege that Defendant Jones had any part in the alleged incident, and Jones testified that she was not present at the alleged assault. Doc. 19-2. To the extent Plaintiff seeks to hold Jones liable based on her supervisory position, § 1983 claims "may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*." *Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010)) "A supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity." *Id*. (citing *Keating*, 598 F.3d at 762). Accordingly, Plaintiff's claims against Jones premised upon her supervisory authority are due to be dismissed.

### C.      Qualified Immunity for Individual Capacity Claims

Defendants raise the defense of qualified immunity to the claims against them in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). To determine whether a defendant has met this burden, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282–83 (11th Cir. 1998) (citations omitted). Here, because it is undisputed that Spencer and Bryant were moving Plaintiff from one cell block to another at the time of the alleged incident, it is clear they were acting within the course and scope of their discretionary authority when the alleged conduct occurred.

Accordingly, the burden shifts to the Plaintiff to show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). To satisfy this burden, Plaintiff must show two things: (1) a defendant committed a constitutional violation and (2) the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided," (2) "a broader, clearly established principle that should control the novel facts of the situation," or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted).

The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments," and it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks

omitted). "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010), *aff'd,* 566 U.S. 356 (2012) (*citing Pearson*, 555 U.S. at 241–42).

If the alleged constitutional violation is an excessive force claim, the excessive force "must have been sadistically and maliciously applied for the very purpose of causing harm," and it is "clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002), *overruled on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). Therefore, "where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution. . . ." *Id.; Bowden v. Stokely*, 576 F. App'x 951, 954–955 (11th Cir. 2014) Accordingly, while "there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Id*. at 955 (citing *Skrtich v. Thornton*, 280 F.3d

1295, 1301 (11th Cir. 2002)). Accordingly, the Court will consider whether Plaintiff's allegations against Spencer and Bryant, which the Court must take as true for purposes of summary judgment, set forth a violation of his Eighth Amendment rights.

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. at 8 (internal quotations omitted). The objective component requires that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id*. (citation omitted). Whether force was applied maliciously and sadistically to cause harm requires analysis of several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins,* 559 U.S. at 38. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition

of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force. . . ."); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force."); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (holding application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Generally, correctional officers are authorized to use force when a prisoner fails to comply with an order. "Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (citation omitted). Therefore, the core inquiry is whether force was applied in a good-faith effort to maintain or restore discipline or "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (citation omitted).

Plaintiff's evidence reflects that on September 12, 2019, when he was leaving segregation and being moved from Cell E-25 in handcuffs and shackles, Defendant Spencer gave him an order to walk in front the "seg" unit. As Plaintiff was complying with this and

all other orders, Spencer threw him to the ground, Bryant arrived, and both officers kicked, hit, and spit on Plaintiff while he was on the ground still handcuffed and shackled. Docs. 1, 9, 23. Thus, viewing the facts in a light most favorable to Plaintiff, the Court concludes that Defendants Spencer and Bryant are not entitled to qualified immunity, as Plaintiff has alleged facts sufficient to survive summary judgment on his excessive force claim. *Skrtich*, 280 F.3d at 1301. Disputed issues of material fact exist regarding the need for the use of force, the nature of the force used, and whether Spencer and Bryant acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment on Plaintiff's excessive force claim against Spencer and Bryant in their individual capacities is due to be denied.

## V.   CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS the following:

1.     Defendants' Motion for Summary Judgment (Doc. 19) be GRANTED with respect to Plaintiff's claims for monetary damages against all Defendants in the official capacities, as they are entitled to absolute immunity;

2.     The motion be GRANTED with respect to Plaintiff's claims based on respondeat superior against Defendant Jones in her individual capacity;

3.     The motion be DENIED with respect to Plaintiff's excessive force claim against Defendants Spencer and Bryant in their individual capacities; and

4.     This case be referred back to the undersigned for an evidentiary hearing on the Plaintiff's surviving excessive force claim against Defendants Spencer and Bryant.

Further, it is ORDERED that by **June 15, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 1st day of June, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE